2020 IL App (1st) 171262-U
No. 1-17-1262
May 4, 2020

First Division

**NOTICE**: This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CR 12234 |
| | ) | |
| BUFORD ACKLIN, | ) | Honorable |
| | ) | Thomas V. Gainer, Jr., |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE WALKER delivered the judgment of the court.
Justice Hyman and Justice Pierce concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court may admit into evidence testimony regarding out of court statements used to explain the conduct of witnesses. The trial court's alleged misstatements of law do not require reversal where they have no prejudicial effect. Assertions of facts not in the record, do not support grounds for finding ineffective assistance of counsel.

¶ 2    Following a bench trial, the trial court found Buford Acklin guilty of aggravated battery.

Acklin argues on appeal that the trial court (1) made several erroneous findings of fact; (2) relied

on inadmissible hearsay; (3) misunderstood the law applicable to Acklin's claim of self-defense;

and (4) convicted him on the basis of testimony not worthy of belief. Acklin also contends that his attorney provided ineffective assistance of counsel by failing to (1) object to hearsay, (2) argue a defense of necessity, and (3) present available evidence supporting his self-defense claim. We hold that the evidence supports the trial court's factual findings and the conviction, the trial court did not commit plain error by allowing a witness to testify about what she heard, and the trial court's rejection of the self-defense claim was based on its assessment of the witnesses' credibility. We also find Acklin has not presented a sufficient record to show that he received ineffective assistance of counsel. Accordingly, we affirm the trial court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4     A crowd filled Washington Park on Father's Day, June 15, 2014. Marcello Thrash got into a fight with his stepfather, Gregory Blackwell, in the park. After Gregory's brother, Jimmie Blackwell, approached the fighters, a gun in Acklin's hand discharged, putting a bullet in Jimmie's leg. Jimmie recovered from the injury. Prosecutors charged Acklin with attempted murder and aggravated battery.

¶ 5     At the bench trial, Randy Blackwell, brother of Jimmie and Gregory, testified that around 6:30 pm on June 15, 2014, he saw Acklin and Marcello coming from the parking lot in Washington Park. Marcello approached Gregory from behind and hit him with a sucker punch, initiating the fight. Randy did not hear any verbal exchange before the punch. Randy and others tried to break up the fight, and no one held Acklin back from the fight. Randy initially testified that he saw Acklin wave a gun. On cross examination, Randy retracted his testimony about seeing Acklin wave the gun, and instead stated that Acklin pulled the gun out and immediately shot Jimmie. When the shot went off, "Everybody in the park just scattered."

¶ 6    Tammie Paige, a friend of the Blackwells, testified that she saw Marcello walk from the parking lot around 6:30 pm, come up behind Gregory, and hit him. Acklin intervened in the fight, but another man in the park grabbed Acklin from behind and pulled him away. The man said, "this going to be a fair fight." No one hit Marcello with a bottle. No one held Acklin when he pulled out his gun and fired a shot at Jimmie.

¶ 7    Jimmie testified that around 6:30 pm on June 15, 2014, he went to his car on the street near Washington Park to get some beer. When he went to rejoin his brothers he saw Marcello on top of Gregory, punching hard. A crowd gathered around the fight. Jimmie did not see anyone hit Marcello with a bottle. Jimmie pulled Marcello off Gregory and then he heard a shot.

¶ 8    In response to the prosecutor's questions, Jimmie testified:

> "Q  *** [W]hat did you do?
>
> A  Took off running immediately.
>
> Q  Okay. When you took off running, did you see anybody then?
>
> A  Yes. I seen him running with the gun.
>
> Q  When you say him, who did you see running?
>
> A  I mean, excuse me, Buford Acklin.
>
> Q  Okay. You saw the Defendant running with the gun?
>
> A  Yes.
>
> Q  In which direction was he running?
>
> A  He ran in the opposite direction of what I was running in.
>
> ***

Q As you're running in the opposite direction of the Defendant, what happened with the crowd at that point in time?

A Everybody broke away."

¶ 9 Jimmie testified that he first saw Acklin after the shooting, running with the gun in hand. Defense counsel impeached Jimmie with a video recording of the statement he made to police. In the video, Jimmie said he saw two men holding Acklin, preventing him from intervening in the fight, before the shot.

¶ 10 Marcello testified that he and his close friend Acklin arrived at the park around 3 pm, with their girlfriends. A few minutes later, Gregory called Marcello and when Marcello approached, Gregory shouted, "bitch, you been looking for [me]?" Marcello answered, "bitch, you knocking my mother out?" Gregory threw the first punch and slammed Marcello to the ground. Marcello testified, "I start seeing multiple fists and kicks all over my body." Someone hit Marcello over the head with a bottle, cutting a bloody gash in his head. Then Marcello heard the gunshot. Acklin helped Marcello get up and get back to the car. They went to the home of Marcello's mother, Carmelita Thrash, Gregory's ex-wife. Carmelita saw Marcello's injuries and insisted he go to the hospital. Marcello testified that he used a false name at the hospital because of an outstanding warrant.

¶ 11 Carmelita corroborated Marcello's testimony that he came to her home covered in blood and was taken to the hospital by Carmelita's sister.

¶ 12 Acklin testified that he and Marcello, with their girlfriends, arrived at Washington Park after 6 pm on June 15, 2014. They "parked on the street," "where all the cars just park." He saw Marcello "having words" with Gregory, and he heard Gregory call Marcello, "bitch." Marcello

answered, "you knocked out my mama."  Gregory started fighting Marcello and Acklin ran over, but two men grabbed him before he could get to the fighters.  He heard a bottle break and he saw Marcello bleeding. He testified, "[It f]elt like *** our lives was in danger. *** I couldn't even see [Gregory and Marcello] no more it was so many people [around the fight]."  As he pulled the gun from its holster a man grabbed him from behind in a bear hug, causing the gun to discharge.

¶ 13    In closing argument, defense counsel argued that Paige's testimony about a fair fight showed that the court should not believe Randy's testimony:

> "Judge, you know what a fair fight is. If -- it had started with a sucker punch, no one would be yelling, let them fight a fair fight. *** Didn't start with a sucker punch."

¶ 14    Counsel argued that the threat to Marcello justified Acklin's decision to pull out his gun. Acklin could not directly intervene because others, according to Paige and Acklin, held him back.

¶ 15    The court summarized the testimony:

> "[Jimmie] saw Marcello Thrash on top of Greg; he saw him hitting him repeatedly, getting the best of him; and he immediately went to try and pull Marcello off of Greg; and when he did so, he heard a shot.
>
> * * *
>
> *** [A]s he ran, he turned to see the Defendant also running in the opposite direction, and he saw a gun in the Defendant's hand.
>
> * * *
>
> *** Everyone scattered after the shot. ***
>
> * * *

The Defendant says they parked on the street; yet everybody has him parking in the parking lot and coming from the parking lot. ***

* * *

*** I resolve the issue of the credibility of these witnesses in favor of the Prosecution for this reason: Tammi Paige talked about this fair fight guy, and that's very, very important because it is totally consistent with *** what Jimmie Blackwell said that, when he came back, after not being on the scene at all when the fight started; not seeing the sucker punch; not seeing *** his brother getting slammed to the ground. When he shows up on the scene, all of this other stuff has happened.

He then goes up and tries to pull Marcello off of his brother when he gets shot. There were no other people fighting. I don't believe there were other people fighting.

I believe the testimony of Tammi Paige and Jimmie and Randy. There were no other people fighting. The Defendant tried to get involved; Frank pulled him back and said, let this be a fair fight, and the Defendant took it upon himself to -- to walk back a few steps, pull his gun and aim it at – at Jimmie when Jimmie tried to pull Marcello off of his brother, Greg.

This wasn't an accident. It's been argued that this was self-defense, but if I believe the Defendant -- and I don't -- then it was an accident, that it was really the bear hug guy, according to the Defendant, that caused the bullet to discharge when he grabbed the Defendant around -- from behind, and held him.

And how can I believe, how can I reconcile the testimony of Marcello and the

Defendant when -- when Marcello has the fight happening at 3:05 p.m. and the

Defendant has it happening at 6:30 p.m.?"

¶ 16    The court found Acklin not guilty of attempted murder, but guilty of aggravated battery, and sentenced him to 9 years in prison.  Acklin now appeals.

¶ 17                                II. ANALYSIS

¶ 18    Acklin argues on appeal that the trial court (1) made erroneous findings of fact; (2) improperly admitted hearsay evidence; (3) relied on erroneous reasoning to reject the self-defense claim; and (4) erred in finding that the State proved him guilty.  Acklin also contends that his trial counsel provided ineffective assistance by failing to (1) object to hearsay; (2) argue a defense of necessity; and (3) present evidence supporting the self-defense claim.

¶ 19                                A. Findings of Fact

¶ 20    We defer to the trial court's findings of fact, which we will not disturb unless they are against the manifest weight of the evidence. *People v. Dixon*, 2015 IL App (1st) 133303, ¶ 21. Acklin objects to four particular findings: the court found that Jimmie "turned to see the Defendant also running in the opposite direction;" "Everyone scattered after the shot;" only Gregory and Marcello fought; and Acklin parked in the parking lot, not on the street.

¶ 21    Jimmie testified that after he heard the shot come from behind him, and after he took off running, he saw Acklin "running in the opposite direction."  Jimmie also testified that once he started running, he "didn't look back."  When defense counsel pointed out the inconsistency, Jimmie testified that he saw Acklin "at [a] 90-degree angle."  The trial court resolved the inconsistency by finding the testimony that Jimmie saw the gun after hearing the shot more

credible, supporting the conclusion that Jimmie must have turned somewhat to see Acklin behind him as Jimmie started running.

¶ 22    Jimmie and Randy both testified that everyone scattered after the shot. Jimmie testified that only Gregory and Marcello fought before he intervened. Paige testified that others tried to break up the fight, but men in the park pulled the interveners away. Sufficient evidence supports the trial court's finding that apart from Gregory and Marcello, "[t]here were no other people fighting."

¶ 23    Paige and Randy testified that they saw Acklin and Marcello coming from the parking lot, while Acklin testified that they parked on the street. The finding that they parked in the lot also has sufficient support in the testimony. We find the four contested findings are not contrary to the manifest weight of the evidence.

¶ 24                                    B. Hearsay

¶ 25    The trial court relied on evidence that Paige heard others in the park say, "this [is] going to be a fair fight." Acklin argues that the court should have barred the evidence as hearsay. The State points out that Acklin's attorney did not object to the testimony at trial. Acklin asserts that this court should review the constitutional issue under an exception to the forfeiture rule.

¶ 26    Our supreme court held: "three types of claims are not subject to forfeiture for failing to file a posttrial motion: (1) constitutional issues that were properly raised at trial and may be raised later in a postconviction petition; (2) challenges to the sufficiency of the evidence; and (3) plain errors." *People v. Cregan*, 2014 IL 113600, ¶ 16. Because Acklin did not raise the constitutional issue at trial, we review the issue only for plain error. *Cregan*, 2014 IL 113600, ¶ 16.

¶ 27    The hearsay rule bars only evidence offered to prove the truth of the matter asserted in the out-of-court statement.  Ill. R. Evid. 801, 802.  The rule does not bar evidence used to explain a course of conduct (*People v. Weatherspoon*, 394 Ill. App. 3d 839, 850 (2009)), especially if the conduct otherwise makes little sense. See *People v. Theis*, 2011 IL App (2d) 091080, ¶ 33.  Paige's testimony about what she heard helped explain why others in the park did not break up the fight. The trial court did not rely on the statement as evidence that both fighters fought fair.  We find that the trial court did not commit plain error by allowing Paige to testify about what she heard.

¶ 28                                    C. Self-defense

¶ 29    Acklin maintains that the trial court rejected his claim of self-defense based on the court's incorrect belief that the claim conflicted with Acklin's testimony that the gun discharged accidentally.  A defendant may claim both that he drew a weapon in self-defense and that the weapon discharged accidentally.  See *People v. Bedoya*, 288 Ill. App. 3d 226, 237 (1997). However, the trial court here clarified that it rejected the argument for self-defense because the court found the testimony of Acklin and Marcello not credible.

¶ 30    To show that he acted in self-defense or in justified defense of another, a defendant must show that "the facts and circumstances would induce a reasonable apprehension of serious bodily harm in light of the defendant's perception of the situation at the time he employed force against [the] aggressor." *People v. Estes*, 127 Ill. App. 3d 642, 651 (1984); see 720 ILCS 5/7-1(a) (West 2014).  "While it is true, as defendant contends, that the law does not require the aggressor be armed before the use of a deadly weapon in self-defense is justified, it must appear that the aggressor is capable of inflicting serious bodily harm without the use of a deadly weapon, and is intending to do so." *People v. Brown*, 218 Ill. App. 3d 890, 899 (1991).

¶ 31    The court believed the testimony of Jimmie, Randy, and Paige, who all said that people in the crowd pulled off others who tried to intervene, leaving only Gregory and Marcello fighting before Jimmie returned; no one broke a bottle on Marcello's head; and no one held Acklin as he drew, aimed, and fired the gun. The findings of the trier of fact lead to the conclusion that Acklin did not reasonably believe he needed to use deadly force to prevent serious bodily harm in the fistfight. The court's findings, supported by testimony, warrant the rejection of Acklin's claim that he acted in self-defense. Any possible error in the legal analysis had no prejudicial effect and does not require reversal. See *People v. Nestrock*, 316 Ill. App. 3d 1 (2000).

¶ 32                    D. Sufficiency of the Evidence

¶ 33    Acklin contends that the inconsistencies in the testimony of Jimmie, Randy, and Paige make the evidence so unreliable that this court must reverse the conviction. "When a defendant challenges the sufficiency of the evidence, it is not the function of this court to retry the defendant. [Citation.] A reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Evans*, 209 Ill. 2d 194, 209 (2004).

¶ 34    Jimmie testified that the fight had already started before he went to his car. He did not know how it started, but it had gone on for a couple minutes before he intervened. Jimmie testified that he first saw Acklin after the gunshot, but a video recording showed that he told police he saw someone holding Acklin before the shot. Jimmie testified inconsistently that he ran after the shot without looking back, and that he saw Acklin, behind him and heading in the opposite direction, after the shot. Randy testified both that he saw Acklin waving the gun before the shot, and that he did not see the gun until Acklin drew and immediately fired the shot. Randy testified that several

people tried to stop the fight, and Paige testified that Acklin "was jumping in the fight," but Jimmie said that only Gregory and Marcello fought. Paige testified that when the fight began she "start[ed] running – well, looking the other way for my kids, my grandkids. Turned back around." But somehow, after running away from the fight, she stood only four feet from the fight when she saw Acklin pulled back.

¶ 35    "It is the function of the trier of fact to assess the credibility of the witnesses, to determine the appropriate weight of the testimony, and to resolve conflicts or inconsistencies in the evidence. [Citation.] Therefore, reversal is not warranted simply because the defendant alleges that a witness was not credible." (Internal quotation marks omitted.) *Evans*, 209 Ill. 2d at 211-12. We find that the inconsistencies are not so pervasive as to destroy the credibility of the central testimony: Gregory and Marcello fought, with no weapons; others, including Acklin, tried to intervene but were pulled away; Jimmie put his hands on Marcello just before the gun discharged; no one hit Marcello with a bottle, and no one held Acklin as he aimed and fired his gun. We do not find the evidence "so unreasonable, improbable or unsatisfactory that it raises a reasonable doubt of defendant's guilt." *Evans*, 209 Ill. 2d at 209.

¶ 36                              E. Ineffective assistance of counsel

¶ 37    Next, Acklin claims that he received ineffective assistance of counsel, because his attorney failed to object to hearsay, failed to raise a necessity defense, and failed to present better evidence supporting the self-defense claim. To show ineffective assistance of counsel, "a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant. [Citation.] Specifically, a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v. Veach*, 2017 IL 120649, ¶ 30 (internal quotation marks omitted). The defendant "must overcome a strong presumption that, under the circumstances, the challenged action or inaction of counsel was a valid trial strategy." *People v. Goods*, 2016 IL App (1st) 140511, ¶ 45.

¶ 38                                    1. Hearsay

¶ 39    Defense counsel strategically used Paige's testimony about what she heard to bolster the credibility of Marcello and Acklin and to argue against the credibility of Randy's testimony. Paige's testimony supported Acklin's account in that it explained why someone grabbed him from behind when he tried to intervene. Defense counsel also argued that if the fight started with a sucker punch, no one would have called it a fair fight. The record supports the inference that defense counsel chose not to object to Paige's testimony on strategic grounds. "[M]istakes in trial strategy or judgment will not, of themselves, render the representation incompetent." *People v. Nowicki*, 385 Ill. App. 3d 53, 82 (2008). We find that the strategic decision not to object to testimony about what others in the park said is insufficient to establish ineffective assistance of counsel.

¶ 40                                    2. Necessity

¶ 41    "[T]o establish a defense of necessity, the person claiming the defense (1) must be without blame in occasioning or developing the situation and (2) must have reasonably believed that his conduct was necessary to avoid a greater public or private injury than that which might have reasonably resulted from his own conduct. [Citation.] This usually involves the choice between two admitted evils where other optional courses of action are unavailable, and the conduct chosen

must promote some higher value than the value of literal compliance with the law." *People v. Crowder*, 2018 IL App (1st) 161226, ¶ 33.

¶ 42    Acklin bases his argument for a necessity defense on the same evidence and inferences that he used to support his claim of self-defense.  Marcello and Acklin testified that someone broke a bottle over Marcello's head, and the danger of severe bodily injury justified Acklin's decision to draw his gun.  The trial court found the evidence not credible.  We do not see how framing the issue as a matter of necessity rather than defense of another would alter the credibility assessment or the result of the trial.  Accordingly, we find that Acklin suffered no prejudice from failure to argue a necessity defense.

¶ 43                                    3. Missing evidence

¶ 44    Finally, Acklin claims that counsel could have presented more evidence in support of the self-defense claim.  Defense counsel told the trial court in pretrial proceedings that Marcello's grandmother and Acklin sought orders of protection against Gregory in the course of the "ongoing family dispute" between Gregory and Carmelita.  The attorney did not offer the orders of protection into evidence at trial.  The attorney did not offer evidence to support Marcello's testimony that Gregory had knocked out Carmelita.  The attorney did not offer any hospital records to verify that Marcello went to a hospital for treatment for the wounds Marcello received in Washington Park.

¶ 45    The record on appeal does not include the orders of protection, the hospital records, or evidence beyond Marcello's and Acklin's testimony that Gregory knocked out Carmelita. The claim that the evidence would bolster the self-defense claim cannot be "considered by the reviewing court on direct appeal because the claim's evidentiary basis [is] *de hors* the record." *People v. Mitchell*, 189 Ill. 2d 312, 345 (2000). In the absence of the hospital records, orders of

protection, and other allegedly available testimony, we cannot conclude that the evidence would have made any difference at trial. See *People v. Johnson*, 183 Ill. 2d 176, 192 (1998). "[I]neffective assistance of counsel claims may sometimes be better suited to collateral proceedings *** when the record is incomplete or inadequate for resolving the claim." *Veach*, 2017 IL 120649, ¶ 46.

¶ 46                                III.  CONCLUSION

¶ 47    The evidence at trial sufficiently supports the trial court's findings of fact.  The court did not commit plain error by allowing Paige to testify about what she heard.  The court rejected Acklin's self-defense claim because the court found Jimmie, Randy, and Paige more credible.  The evidence sufficiently supports the conviction. Acklin suffered no prejudice from counsel's failure to argue a necessity defense. The record on appeal is not sufficient to establish ineffective assistance of counsel.  Accordingly, we affirm the judgment of the trial court.

¶ 48    Affirmed.