2025 IL App (1st) 221027-U

No. 1-22-1027

Order filed May 28, 2025

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 18 CR 7520 |
| EDWARD SLOAN, | ) ) ) | Honorable Brian K. Flaherty, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MARTIN delivered the judgment of the court.
Presiding Justice Lampkin and Justice Reyes concurred in the judgment.

**ORDER**

¶ 1     *Held*:   We reverse defendant's conviction for vehicular invasion where the evidence was insufficient to prove that he entered or reached into the interior of a vehicle occupied by another person.

¶ 2     Following a bench trial, defendant Edward Sloan was convicted of attempted murder and vehicular invasion and was sentenced to concurrent terms of 31 years and 15 years in prison, respectively. On appeal, he only challenges his vehicular invasion conviction and argues that the

State failed to prove his guilt beyond a reasonable doubt. We reverse his vehicular invasion conviction and otherwise affirm.[1]

¶ 3                                    I. BACKGROUND

¶ 4       Sloan was charged by indictment with attempted murder, aggravated battery, aggravated discharge of a firearm, and vehicular invasion, relating to the shooting of Andre Herndon on April 28, 2018. Relevant here, the vehicular invasion count alleged that Sloan, by force and without lawful justification, entered or reached into the interior of a vehicle occupied by Herndon with the intent to commit therein a felony, aggravated battery. 720 ILCS 5/18-6(a) (West 2018).

¶ 5       At trial, the State called Herndon. When asked where he was just before 7 p.m. on April 28, 2018, Herndon answered multiple times, "I don't want to participate in this." Eventually he answered that he was at a Citgo gas station (Citgo) in Dolton. The State inquired if he saw anyone in court whom he had seen at the gas station, and Herndon stated, "I'm not participating in this." The court instructed Herndon to answer the question, and Herndon replied, "I refuse to answer." Herndon requested a lawyer or representative, and the court recessed to allow Herndon to consult with a public defender. Following the recess, Herndon repeated that he would not participate in the trial. The court found Herndon in direct criminal and civil contempt of court, ordered him into custody until he participated, and continued the case.

¶ 6       When trial resumed, the State called Kyana Henderson. Henderson testified that, around 7 p.m. on April 28, 2018, she drove with Sloan, whom she was dating, to the Citgo on Cottage Grove Avenue, in Dolton, to purchase cigarettes and a beverage. She parked at a gas pump, with the pump

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

on the left side of her vehicle. Sloan exited her vehicle, spoke to a man parked in front of Henderson, and then reentered her vehicle.

¶ 7 Another vehicle arrived and parked at the pump to the passenger side of Henderson's vehicle. Sloan again exited Henderson's vehicle and spoke to the driver of the new vehicle, who remained in his vehicle. Henderson then heard three or four gunshots and observed Sloan firing "[i]nto the vehicle." She agreed that she witnessed Sloan "pointing the gun into that vehicle" and "pointing the gun at that individual that was seated in that vehicle." After Sloan reentered Henderson's vehicle, she drove away.

¶ 8 The parties stipulated to the foundation of surveillance footage from the Citgo parking lot, and the State published the footage during Henderson's testimony. Henderson described the footage as depicting Sloan exiting her vehicle, opening the door to the adjacent vehicle, and speaking to the man sitting in that vehicle. According to Henderson, Sloan and the other man might be arguing. Henderson stated that the other man exited the vehicle, and Sloan then backed up and shot toward the other man, using a firearm in his right hand.

¶ 9 The video, which this court has viewed, depicts a vehicle—which Henderson identified as hers—entering the Citgo and parking at a pump behind an SUV. A man whom Henderson identified as Sloan exits the passenger seat of Henderson's vehicle and enters the rear passenger seat of the SUV.

¶ 10 Several minutes later, the victim's vehicle arrives and parks on the passenger's side of Henderson's vehicle. Both cars face the same direction. The victim exits his vehicle and walks towards the store, looking towards Henderson's vehicle as he passes it. While the victim is offscreen, Sloan exits the SUV and begins to walk toward the store. Sloan then turns and approaches Henderson's vehicle as the victim returns to his own vehicle. Sloan and the victim pass

closely but do not visibly interact. Sloan reenters the passenger seat of Henderson's vehicle. The victim uses the gas pump and returns to his driver's seat.

¶ 11 As the victim sits in his vehicle, Sloan exits Henderson's vehicle and approaches the victim. Sloan opens the victim's car door with his left hand and releases it. The door remains about halfway open. Sloan stands between the open vehicle door and where the victim sits in the driver's seat. He appears to converse with the victim for about 10 seconds, at times leaning down. The victim then exits his vehicle and stands in the space created by the open door. Sloan steps backward and away from the victim, extending his arm while holding a firearm, and appears to shoot the victim. The victim falls backward into the vehicle. Sloan steps forward slightly and appears to continue firing. The victim appears to crawl out of his vehicle. Sloan then reenters Henderson's vehicle, which drives away, as the victim lies on the ground.

¶ 12 The State then recalled Herndon to the stand. Herndon testified that he was shot several times at the Citgo on April 28, 2018. He "[v]aguely" knew Sloan from school and was not sure if Sloan was in court. Herndon did not remember who shot him and was not sure if it was Sloan. He did not recall identifying Sloan as the shooter to police at the scene or to a detective and assistant State's attorney (ASA) while in the hospital during videotaped interviews.

¶ 13 Dolton police officer Louis Masucci testified that he was dispatched to the Citgo and attempted to treat Herndon. Herndon stated that Sloan shot him.

¶ 14 The parties stipulated to the foundation of both a photograph array signed by Herndon, in which Herndon identified Sloan as his shooter, and videotaped interviews of Herndon at the hospital by a detective on April 29, 2018, and ASA on April 30, 2018.

¶ 15 In the first interview, a detective shows a photograph array to Herndon. Herndon identifies a person he recognizes as Sloan, a former classmate, as the man that shot him five times.

¶ 16    In the second interview, Herndon again identifies a photograph of Sloan and states that he saw Sloan in the Citgo parking lot. As he sat in his vehicle, Sloan opened the driver's door and got "super close" to him. Herndon "jumped" out of his vehicle. Sloan was "talking s***." Sloan pointed a firearm at Herndon while they stood "toe to toe," and shot Herndon several times. Herndon's legs "went out" and he tried to "squeeze" under his vehicle. Sloan reentered the vehicle he had been in, which drove away.

¶ 17    Sloan testified and denied dating Henderson on the day of the shooting, being at the Citgo, or shooting Herndon. He spent the entire day of the shooting at the home he shared with his father.

¶ 18    On cross-examination, Sloan testified that he spent the day working for a pest extermination company. He did not know if he was still working when the shooting occurred around 7 p.m. He sometimes worked until 10 p.m. and might have been on his lunch break at the time of the shooting. According to Sloan, Henderson had a different boyfriend who resembled Sloan, and Henderson's new boyfriend shot Herndon. He believed that people at the Citgo may have mistakenly told Herndon that Sloan was the shooter, given their resemblance and Sloan's association with Henderson. Sloan speculated that Henderson identified him as the shooter to protect her new boyfriend.

¶ 19    During closing arguments, the State asserted that Sloan had the specific intent to kill Herndon. The State requested the court find Sloan "guilty of all counts, of attempt first degree murder and aggravated battery with a firearm, as well as aggravated discharge." Sloan argued that no evidence linked him to the case, but should the court find he was the offender, Sloan requested a finding of guilty on the aggravated battery with a firearm count and not the attempted murder count. Neither party discussed the elements of vehicular invasion.

¶ 20    The court found Sloan guilty of all counts, noting it found Sloan's testimony incredible. The court explained that "the proximity between [Sloan] and [Herndon], the multiple shots, the reaching into the car, you were toe to toe, it was one intent and one intent only, and that was to kill" Herndon. The court did not articulate its reasoning for finding Sloan guilty of vehicular invasion.

¶ 21    The court denied Sloan's motion for a new trial or reconsideration. Following a hearing, the court merged the attempted murder, aggravated battery, and aggravated discharge counts into one attempted murder count and sentenced Sloan to 31 years in prison. The court imposed a concurrent term of 15 years in prison for vehicular invasion.

¶ 22                                 II. ANALYSIS

¶ 23    On appeal, Sloan solely argues that there was insufficient evidence to prove him guilty of vehicular invasion.

¶ 24    Due process requires that the State prove every essential element of an offense beyond a reasonable doubt. *People v. Murray*, 2019 IL 123289, ¶ 28. "When reviewing a challenge to the sufficiency of the evidence, we must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Harvey*, 2024 IL 129357, ¶ 19. We must view the evidence in the light most favorable to the State and allow all reasonable inferences in the State's favor. *Id.* It is the factfinder's responsibility to resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences, and we are not to substitute our judgment for the factfinder's on questions involving the weight of the evidence or the witnesses' credibility. *People v. Galarza*, 2023 IL 127678, ¶¶ 25-26.

¶ 25    However, we will reverse a conviction if the evidence "is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." (Internal quotation

marks omitted.) *Id.* ¶ 26. The factfinder's determinations involving the weight of the evidence are entitled to deference but are not conclusive. *Murray*, 2019 IL 123289, ¶ 19. Moreover, deference is traditionally afforded to the lower court's factual findings because the court is better able to determine the credibility of live witnesses. *People v. Radojcic*, 2013 IL 114197, ¶ 34. Where factual findings are based on evidence other than live testimony, such as surveillance videos, "we give less deference to a trial court's determinations of fact" (*People v. Shaw*, 2015 IL App (1st) 123157, ¶ 29), and such findings "are not entitled to any deference" (*People v. Dixon*, 2015 IL App (1st) 133303, ¶ 20).

¶ 26    An individual commits vehicular invasion when he "knowingly, by force and without lawful justification, enters or reaches into the interior of a motor vehicle while the motor vehicle is occupied by another person or persons, with the intent to commit therein a theft or felony." 720 ILCS 5/18-6(a) (West 2018). Sloan contends that the State failed to prove beyond a reasonable doubt that he (1) entered or reached into the interior of the vehicle Herndon occupied, (2) by force, and (3) with the intent to commit therein an aggravated battery, as charged.

¶ 27    In finding that Sloan had the intent to kill Herndon, the trial court stated that Sloan "reach[ed] into" Herndon's vehicle. Initially, we must determine the deference afforded to this statement. Sloan argues that we should give less deference to the court's finding, since it was based solely on the court's viewing of the surveillance footage. Sloan contends that the footage does not depict him reaching into Herndon's vehicle and that the court's finding was therefore against the manifest weight of the evidence. The State contends that the court's finding is entitled to deference as it "came after reviewing the video *and* hearing live testimony about the offense." (Emphasis in original.) The State advocates for the standard employed in sufficiency of the evidence challenges, that is, "whether any rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt." *Harvey*, 2024 IL 129357, ¶ 19. That standard prohibits us from substituting our judgment for the factfinder's regarding the weight of the evidence. *Galarza*, 2023 IL 127678, ¶ 26.

¶ 28 For the following reasons, we agree with Sloan that the court's finding that he reached into the vehicle should be reviewed under the manifest weight of the evidence standard.

¶ 29 The witnesses at trial were Herndon, Henderson, Officer Masucci, and Sloan. Officer Masucci did not witness the events, Sloan denied being present, and Herndon denied having anything but a vague memory of the shooting. Thus, the only witness who provided live, relevant testimony about Sloan's actions was Henderson.

¶ 30 However, Henderson never testified that Sloan entered or reached into Herndon's vehicle. Rather, she testified that Sloan shot the firearm "[i]nto the vehicle" and agreed she saw Sloan "pointing the gun into [Herndon's] vehicle" and at Herndon sitting in the vehicle. When Henderson described the events depicted in the surveillance footage, she did not state that Sloan reached into the vehicle Herndon occupied. Thus, the reasonable inference from Henderson's testimony is merely that Sloan aimed the firearm into Herndon's vehicle, not that Sloan reached into its interior with the firearm, as the State argues. See *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004) (reviewing court must allow all reasonable inferences from the record in favor of the prosecution, but may not allow unreasonable inferences, and "if only one conclusion may reasonably be drawn from the record, a reviewing court must draw it even if it favors the defendant").

¶ 31 As no witness testified that Sloan reached into the interior of Herndon's vehicle, the court's finding that Sloan had done so could only come from its viewing of the surveillance footage, which the trial court was no better equipped to review than this court. Accordingly, we need not afford the trial court deference on this point and may reverse the court's finding that Sloan reached into

the vehicle if it is against the manifest weight of the evidence. See *Dixon*, 2015 IL App (1st) 133303, ¶ 29 (when factual finding could not have been based on witness testimony but only surveillance video, deference to the trial court was not required and the finding could be reversed if against the manifest weight of the evidence); see also *Shaw*, 2015 IL App (1st) 123157, ¶ 30 (reviewing court is "required" to reject determinations that are against the manifest weight of the evidence). Findings are against the manifest weight of the evidence "only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence." *Dixon*, 2015 IL App (1st) 133303, ¶ 21.

¶ 32 Turning to the surveillance footage, it demonstrates Sloan—identified by Henderson—opening the door to Herndon's vehicle. Sloan stands in the space created by the open door and appears to converse with Herndon, who is seated, for approximately 10 seconds, while intermittently leaning down. Herndon then exits the vehicle and stands in the space created by the open door. Sloan steps back towards the rear of the vehicle, raises a firearm, and shoots Herndon. Herndon falls backwards towards the open vehicle compartment, and Sloan steps forward slightly, and appears to continue firing. Sloan then reenters Henderson's vehicle, which drives away.

¶ 33 The State does not identify any moment in the footage where Sloan reaches into Herndon's vehicle, and we cannot discern any such instance from the footage. As no witness testified that Sloan reached into the interior of Herndon's vehicle and the surveillance footage does not show him doing so, the court's finding that he reached into the vehicle is against the manifest weight of the evidence. *Id.* (finding is against the manifest weight of the evidence if it is not based on the evidence).

¶ 34 Setting aside the court's statement that Sloan reached into Herndon's vehicle, we find that the remaining evidence was insufficient to prove that Sloan ever entered into the interior of

Herndon's vehicle. See 720 ILCS 5/18-6(a) (West 2018) (an individual may commit vehicular invasion by entering "*or*" reaching into the interior of an occupied vehicle (emphasis added)). In reaching this conclusion, we note that both parties discuss whether Sloan "broke the close" of the vehicle, a phrase commonly used when analyzing burglary offenses. "[B]reaking the close" is "crossing the planes that enclose the protected space." (Internal quotation marks omitted.) *People v. Beauchamp*, 241 Ill. 2d 1, 9 (2011). For a vehicle, the "close" has been defined as "the four sides, the bottom, and the imaginary plane extending atop the sides and parallel to the bottom." *People v. Frey*, 126 Ill. App. 3d 484, 486-87 (1984). Any intrusion into the "close" by any part of the offender's body, even slight, constitutes an entry for purposes of burglary. *Beauchamp*, 241 Ill. 2d at 8-9.

¶ 35    To the extent this concept applies to the present case, no witness testified that Sloan "broke the close" of Herndon's vehicle such that he entered its interior. The evidence relating to whether he did so is therefore limited to (1) the surveillance footage, and (2) Herndon's videotaped interview in which he stated that, after Sloan opened Herndon's driver's door, Sloan got "super close" to him. Again, because neither piece of evidence was live testimony, less or no deference is owed to any implicit finding by the trial court that Sloan entered the vehicle. *Dixon*, 2015 IL App (1st) 133303, ¶¶ 20, 29; *Shaw*, 2015 IL App (1st) 123157, ¶ 29. We conclude that no rational factfinder could find that the State proved beyond a reasonable doubt that Sloan entered the vehicle.

¶ 36    We acknowledge that the position of the camera capturing the surveillance footage does not provide the ideal angle for judging whether part of Sloan's body entered the vehicle. However, although Sloan leans downward several times while speaking with Herndon, at no point is it visible

that any part of his body breaks the "close" into the interior of Herndon's vehicle. Nor did Herndon state that Sloan leaned into the vehicle's interior.

¶ 37    The State argues that Sloan "appears to bend down and lean into the vehicle." However, rather than pointing to a specific instance in which he does so, the State references the entirety of the 15-second portion of the video that depicts Herndon and Sloan's interaction, including the shooting. The State further contends that Herndon's statement that Sloan got "super close" to him after opening the door corroborated that Sloan leaned into the vehicle. Even if we were to assume that Sloan leaned into the vehicle prior to the shooting, there was no evidence that Sloan acted knowingly by force nor that he, at that point, intended to commit any felony.

¶ 38    The "line between a reasonable inference and speculation can be difficult to locate." (Internal quotation marks omitted.) *People v. Fickes*, 2017 IL App (5th) 140300, ¶ 24. "To be reasonable, an inference must arise from a realistic evaluation of the evidence, using rational and logical reasoning drawn from established facts, avoiding suspicion, imagination, conjecture, or subjective impressions." *People v. Johnson*, 2024 IL App (1st) 220494, ¶ 81.

¶ 39    Here, given that the surveillance footage and Herndon's statement do not establish that Sloan entered the vehicle, "we believe speculation, rather than reasonable inference," would be required for a rational factfinder to conclude that Sloan broke the "close" into the interior of Herndon's vehicle before the shooting. *Fickes*, 2017 IL App (5th) 140300, ¶ 24 (finding that the State failed to prove that a building which witnesses referred to as a church was functioning as such on the date the defendant was charged with participating in manufacturing methamphetamine near a place of worship); see also *Murray*, 2019 IL 123289, ¶ 28 ("An essential element of proof to sustain a conviction cannot be inferred but must be established.").

¶ 40    The State also argues that after Sloan shot Herndon, Herndon "dove back into the vehicle," and Sloan "broke the close" of the vehicle by standing between the open door and driver's compartment while he continued to fire at Herndon. We disagree.

¶ 41    In *Beauchamp*, the defendants were charged with burglary for removing the rear window from a hatchback vehicle. *Beauchamp*, 241 Ill. 2d at 4-5. Our supreme court found that it was impossible to remove the window without breaking the close into the vehicle, noting the window had been detached from hydraulic arms located inside the vehicle. *Id.* at 6, 10. However, the court stated that merely "touching the inside of the window, where the window opened away from the vehicle, does not constitute an entry." *Id.* at 10. Here, it is unclear from the surveillance footage that Sloan stood in the space between the open door and driver's compartment while he continued to fire at Herndon. Further, assuming *arguendo* that Sloan did stand in the space created by the open door to Herndon's vehicle, which opened away from the vehicle, we fail to see how standing within that space was an entry into the vehicle's "interior." See 720 ILCS 5/18-6(a) (West 2018) (a person commits vehicular invasion when he, *inter alia*, "enters or reaches into the *interior*" of an occupied vehicle (emphasis added)). It is not apparent from the video footage that Sloan's firearm is close enough to have breached the "close" of Herndon's vehicle.

¶ 42    In sum, the evidence that Sloan entered or reached into the interior of Herndon's vehicle is so unsatisfactory as to create a reasonable doubt of Sloan's guilt of vehicular invasion. We therefore need not reach Sloan's alternative arguments that the State failed to prove he entered or reached into the vehicle's interior by force and with the intent to commit aggravated battery. We reverse his conviction for vehicular invasion. As Sloan raises no challenge to his attempted murder conviction, that conviction is affirmed.

¶ 43                                III. CONCLUSION

¶ 44    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in

part and reversed in part.

¶ 45    Affirmed in part and reversed in part.