THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. COURTNEY HARRIS, Defendant-Appellant.

First District (2nd Division)    No. 1—96—2020

Opinion filed February 3, 1998.—Rehearing denied March 6, 1998.

Mayer, Brown & Platt, of Chicago (James C. Schroeder, Alyssa D. Dudkowski, and Veronica L. Young, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Margaret J. Faustmann, and Janet Powers Doyle, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

After a jury trial, defendant Courtney Harris was found guilty of first degree murder and sentenced to 28 years' imprisonment. Defendant claims on appeal that: (1) he was not proven guilty beyond a reasonable doubt of first degree murder under an accountability theory; (2) the trial court should have quashed his arrest since he was

arrested without probable cause; (3) his statement to police should have been suppressed since it was the result of an illegal arrest; (4) he was denied a fair trial when the trial court failed to inform defense counsel of two notes sent to the court by jurors during deliberations and then failed to respond to them; and (5) the 28-year sentence imposed by the trial court was excessive. We affirm.

On June 5, 1993, the victim, Reginold Jones, died of a gunshot wound to the chest. On November 19, 1993, codefendant Robert Barnes was arrested on an unrelated robbery charge. At that time, Barnes informed the police that he had information about the victim's murder. Barnes initially informed the police that James Mitchell committed the murder. The police located Mitchell, questioned him and placed him in a lineup. The police determined that Mitchell had not been involved in the crime. Barnes then informed the police that it was actually defendant who committed the murder and that Barnes acted as a lookout and took some of the victim's possessions.

Detectives then attempted to locate defendant but did not find him either at his place of employment or his residence. Around 7:30 p.m. on November 19, 1993, defendant and his mother came to Chicago police department Area One headquarters. Detective Albert Graf brought defendant to an interview room and gave him his *Miranda* warnings. Defendant informed Detective Graf that on June 5, 1993, he was at Robert Barnes' house when the two discussed the fact that the victim always carried a lot of money and that he could be found on the corner of 51st and Racine. Barnes then stated that it would be "nice and sweet" to rob the victim. Defendant agreed that it would be nice to rob him. Barnes and defendant then went to 5146 South Racine, where they found the victim using a pay telephone. Defendant stood about 15 to 18 feet away from the victim, and Barnes approached the victim and put the gun to his chest. The victim attempted to back away, and Barnes fired the gun, striking the victim in the chest. The victim fell to the ground and Barnes then removed the victim's gold chain, beeper and keys. Defendant and Barnes then fled the scene. A couple of days later, Barnes went to defendant's home and attempted to give him the stolen jewelry, but defendant said that he did not want anything to do with the stolen property.

Assistant State's Attorney Caren Armbrust testified that on November 29, 1993, at about 9:30 p.m., she advised defendant of his *Miranda* rights and defendant indicated that he understood his rights but would still like to talk about the victim's murder. Armbrust testified that defendant told her that while at Barnes' home, Barnes and defendant agreed that it would be "sweet" to rob the victim. Barnes then went to the back porch, retrieved a handgun, and placed it in

his waistband. Barnes told defendant he should watch for police and for the victim's bodyguards. When they located the victim, Barnes approached the victim and shot the victim as he was backing away. Barnes took money, jewelry and rings from the victim, and defendant and Barnes ran away. Armbrust then wrote out defendant's statement and gave it to defendant to review. Defendant indicated some changes that needed to be made on the statement, and the changes were made and initialed. This statement was read to the jury.

Elgin Duncan testified on defendant's behalf that he saw the victim and the shooter immediately before and after the shooting, but he did not see another man nearby. Duncan did not see the shooter's face but did not believe the shooter was Barnes, whom he had known for a long time.

■ Defendant first claims on appeal that the State failed to prove him guilty beyond a reasonable doubt of murder and armed robbery under an accountability theory. When the sufficiency of evidence is challenged, the relevant question on review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979); *People v. Nitz*, 143 Ill. 2d 82, 572 N.E.2d 895 (1991). A defendant is accountable for the actions of another if "[e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." 720 ILCS 5/5—2(c) (West 1996). While mere presence at the scene of a crime alone will not support guilt by accountability, a defendant may nonetheless be deemed accountable for acts performed by another pursuant to a common plan or purpose. *People v. Stanciel*, 153 Ill. 2d 218, 606 N.E.2d 1201 (1992); *People v. Furby*, 138 Ill. 2d 434, 563 N.E.2d 421 (1990). Factors that raise an inference that the accused aided and abetted the commission of the crime include presence at the scene of the crime without dissociating oneself from the crime scene, flight from the scene, continued association with the perpetrator after the criminal act, failure to report the incident, acceptance of illegal proceeds of the crime, and concealment or destruction of the evidence. *People v. Johnson*, 220 Ill. App. 3d 550, 581 N.E.2d 118 (1991). Acting as a lookout constitutes aiding and abetting the commission of the offense. *People v. Montes*, 192 Ill. App. 3d 874, 549 N.E.2d 700 (1989). Once the State proves that the defendant intended to promote or facilitate a crime, it has established the defendant's responsibility for any criminal act done in furtherance of the intended crime. *People v. Houston*, 258 Ill. App. 3d 364, 629 N.E.2d 774 (1994).

■ There was sufficient evidence for the jury here to conclude that defendant was an accessory to the victim's murder. The victim's murder was committed while defendant and Barnes were engaging in a common plan to rob the victim. Defendant was at Barnes' home when the two discussed that the victim carried a lot of money, and defendant agreed with Barnes that it would be "sweet" to rob the victim. Barnes then retrieved a handgun and put it in his waistband. Defendant and Barnes then went to the corner where they knew the victim was located. Barnes told defendant to watch for police, and defendant stopped about 15 feet away from the victim and acted as a lookout while Barnes approached the victim. After Barnes shot the victim, Barnes and defendant fled the scene. Defendant did not report the crime to the police. These facts are sufficient for the jury to find defendant guilty of murder under an accountability theory.

■ Defendant's next contention is that the trial court should have granted his motion to quash arrest since he was arrested without probable cause. Probable cause to arrest exists where the facts and circumstances known by the police justify a reasonable belief that the person to be arrested has committed a crime. *People v. Robinson*, 167 Ill. 2d 397, 657 N.E.2d 1020 (1995). Defendant claims that the only basis the police had for arresting him was Barnes' statement implicating defendant. Defendant claims that Barnes' statement was insufficient to establish probable cause since Barnes had already proven to be unreliable. Defendant points out that, prior to implicating defendant, Barnes had implicated another man, and the police had determined that that man was not involved in the crime.

We find the instant case similar to *People v. James*, 118 Ill. 2d 214, 514 N.E.2d 998 (1987). There, while codefendant Meeks was being questioned by police, he confessed and implicated the victim. Based on Meeks' statements, the police arrested James, who confessed after being confronted with Meeks' admission. The supreme court held that Meeks' statements provided probable cause to arrest James. The court found that the statement of an accomplice to a crime made while in police custody, implicating another, may provide probable cause to arrest the individual implicated, provided there are some indicia of reliability. The court stated that the reliability of a statement is enhanced: (1) if it contains a statement against penal interest; (2) if it is shown that the statement was not made pursuant to promises of leniency or other inducements; and (3) if there is independent verification of substantial parts of the statement by facts learned through police investigation.

■ Here, Barnes' statement regarding defendant's involvement in the murder implicated himself as well as defendant. In Barnes' initial

statement implicating James Mitchell, Barnes merely stated that Mitchell told him that he was going to commit the crime and then informed him that the crime had been committed. In Barnes' statement implicating defendant, however, Barnes stated that he acted as a lookout and that he went through the victim's clothing and removed money. Moreover, there is no evidence that Barnes' statement was made pursuant to promises of leniency or other inducements. Furthermore, in his statement implicating defendant, Barnes gave specific information as to where the victim was shot and what items were taken from the victim. These factors were sufficient to provide some indicia of reliability establishing probable cause to arrest defendant.

In light of our decision that defendant was not illegally arrested, we need not address defendant's contention that his statement should have been suppressed since it was not sufficiently attenuated from the illegal arrest.

■ Defendant next claims that he was denied a fair trial when the trial court failed to inform defense counsel of a note sent by the jury during deliberations and failed to respond to this note. The jury began its deliberations at 4:55 p.m. At 6:08 p.m., the jury sent the trial court a note asking when Barnes was picked up by police and when he was charged. At the same time the jury sent a note asking the meaning of reasonable doubt. The trial court discussed the notes with the prosecution and defense, and both sides agreed with the trial court's responses. At 7:56 p.m., the jury sent a third note stating, "Your Honor: We have reached an agreement on the armed robbery charge. But, we have an 11-1 hung jury on first degree murder." The trial court discussed the note with the prosecution and defense and told the jury, "Continue your deliberations on that charge." At 10:04 p.m., the jury sent out a fourth note, stating, "Your honor: Our hopelessly hung jury has resulted in a jury member dangerously close to a diabetic/high blood pressure emergency." The transcript next shows that at 10:10 p.m. the prosecutor and defense counsel were present and the trial court informed them that he was going to sequester the jury for the night. The transcript does not reveal that the trial court informed the attorneys of the fourth note. Finally, at 10:40 the next morning, the jury sent out a fifth note stating that its deliberations were "extremely thorough, soul searching and emotional," and expressing its hope that defendant's voluntary surrender and cooperation would "go a long way toward leniency in your sentencing." The transcript again reveals no communication of the contents of this note by the court to defense counsel nor any response to this note by the court to the jury. The record simply reveals the

jury reached a verdict that morning, and the jurors were then polled and excused.

Defendant claims that he was denied a fair trial when he was denied the right to be present and participate in formulating a response to the jury's fourth note. Jury deliberations are a critical stage of trial and involve substantial rights. *People v. Childs*, 159 Ill. 2d 217, 636 N.E.2d 534 (1994). A defendant has a right to appear and participate in person and by counsel at all proceedings affecting his substantial rights, so that he knows what is being done, can make objections and take such action as he deems best to secure his rights and for his protection and defense. *Childs*, 159 Ill. 2d 217, 636 N.E.2d 534. We find that, in the instant case, the trial court's failure to inform defendant of the note deprived him of his constitutional right to be present at and to participate in a critical stage of trial. See *People v. McDonald*, 168 Ill. 2d 420, 660 N.E.2d 832 (1995).

■ We must therefore determine whether defendant suffered any prejudice from the court's failure to inform him of the note. When a defendant is deprived of his constitutional rights to be present at and to participate for his protection in a critical stage of trial, the burden is on the State to prove beyond a reasonable doubt that the error was harmless. *Childs*, 159 Ill. 2d 217, 636 N.E.2d 534.

Defendant contends that because of the court's failure to inquire whether the jury member was feeling well enough to deliberate, the ill juror likely believed the deliberations would continue until a verdict was reached and was thus compelled to chose between his convictions and his health. Defendant claims that the trial court should have given the jury a *Prim* instruction informing the jurors that they should not surrender their convictions for the purpose of returning a verdict. *People v. Prim*, 53 Ill. 2d 62, 289 N.E.2d 601 (1972).

The determinations of what length of time is reasonable to permit a jury to deliberate, whether a jury should continue to deliberate after it has indicated that it is hopelessly deadlocked, and whether to sequester a jury that has more than once indicated that it cannot reach a verdict are matters within the discretion of the trial court. *People v. Allen*, 47 Ill. App. 3d 900, 365 N.E.2d 460 (1977). The record here reveals that a few minutes after receiving the fourth note regarding the juror's health concerns, the trial court addressed this concern by suspending deliberations and sequestering the jurors for the evening. The record does not reveal that the juror with the health concern was also the juror who had not yet decided whether defendant was guilty. However, even assuming the ill juror was the holdout, the trial court's decision to sequester the jury assured that

the juror was not forced to continue deliberations despite his illness. We, therefore, do not find that the juror was compelled to choose between his convictions and his health.

Furthermore, we find that the communication by the jury here, as well as the court's failure to respond to the communication, presents a factual situation distinct from the *Childs* case. In *Childs*, the jury asked the trial court a legal question that was deserving of an answer. In the instant case, in its fourth note, the jury did not ask a question but, rather, simply informed the court that it was deadlocked and a juror was ill. The court immediately responded to this note by halting the deliberations and sequestering the jury. The fifth note sent by the jurors likewise did not ask the court a question but merely informed the court of the status of the deliberations. Certainly no response was required to this note. We therefore find that although the trial court should have communicated these notes to the defendant, no prejudice resulted from the court's failure to do so.

■ Defendant next claims that the trial court abused its discretion in imposing upon defendant a 28-year sentence for first degree murder. Defendant claims that he should have been sentenced to the minimum term of imprisonment for this crime, 20 years. 730 ILCS 5/5—8—1(a)(1)(ᶜa) (West 1994).

We initially note that defendant has waived any challenge to his sentence by failing to file a postsentencing motion challenging the sentence. 730 ILCS 5/5—8—1(c) (West 1994). Even if defendant had not waived this issue, defendant has not shown that the trial court abused its discretion in imposing defendant's sentence. The trial court has wide discretion in determining what sentence is appropriate under the circumstances. *People v. Hattery*, 183 Ill. App. 3d 785, 539 N.E.2d 368 (1989). Defendant points to several mitigating factors that he claims the trial court failed to consider: his youth, his steady employment, his interest in pursuing his education, his cooperation with police, his show of remorse at the sentencing hearing, and his status as an accomplice rather than a principal. However, we presume the trial court considered these factors. *People v. Phillips*, 226 Ill. App. 3d 878, 589 N.E.2d 1107 (1992). The trial court likely also considered that defendant had a delinquency finding for armed robbery. The trial court is not required to give more weight to defendant's rehabilitative potential than to the seriousness of the offense. *People v. Dower*, 218 Ill. App. 3d 844, 578 N.E.2d 1153 (1991). Thus, we cannot say that the trial court abused its discretion in imposing a sentence eight years above the minimum sentence for first degree murder.

570

Accordingly, for the reasons set forth above defendant's conviction and sentence are affirmed.

Affirmed.

TULLY and COUSINS, JJ., concur.