2025 IL App (1st) 231668-U

SECOND DIVISION
March 26, 2025

No. 1-23-1668

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | Nos. 22 CR 11588; 22 CR |
| | ) | 11382; 23 CR 1785; 23 |
| LEO MCGUINN, | ) | CR 502401; 23 CR 5622; 23 |
| | ) | CR 7184; and 23 CR 7508 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Mary Margaret Brosnahan, |
| | ) | Judge Presiding. |

_____

JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

ORDER

¶ 1    *Held*: We affirm the circuit court's order finding defendant unfit for trial. The circuit court's unfitness finding was not against the manifest weight of the evidence. Defendant is not entitled to plain error relief based on his right to be present at the hearing because defendant forfeited his right to be present. Defendant has failed to show counsel provided objectively unreasonable assistance and no prejudice has been demonstrated.

¶ 2    Defendant appeals the circuit court's finding that he is unfit for trial. Defendant argues that the circuit court's finding that he is unfit for trial is against the manifest weight of the evidence. Defendant also argues that he was denied his right under statute and the State and federal constitutions to be present at the fitness hearing. Finally, defendant argues that his trial

counsel was ineffective for failing to ensure his presence at the fitness hearing and failing to object to the manner in which he was excluded. We find that the trial court's fitness determination was not against the manifest weight of the evidence, defendant has not shown an entitlement to relief for being excluded from the fitness hearing, and defendant has not shown an entitlement to relief for ineffective assistance of counsel. Accordingly, we affirm.

¶ 3                                BACKGROUND

¶ 4      Defendant Leo McGuinn was arrested and charged with armed robbery for stealing money from an individual while armed with a knife on March 7, 2021. He was also alleged to have been found to be in possession of heroin on March 8, 2021 and charged for that offense.

¶ 5      While incarcerated on those charges, defendant was charged with committing several additional offenses while in custody. On April 19, 2021, defendant allegedly physically struck a corrections officer and was charged with aggravated battery. Defendant was later charged with more aggravated batteries for allegedly spitting on a member of the Cook County Sheriff's Department on June 9, 2021, and allegedly spitting on a corrections officer on August 3, 2022. On August 5, 2022, defendant allegedly damaged government property belonging to the Cook County Sheriff's Department and was charged for criminal damage to government property. On November 22, 2022, defendant allegedly kicked a Cook County correctional officer and was charged with aggravated battery. On March 19, 2023, defendant allegedly spat on a correctional officer and was charged with aggravated battery. On April 7, 2023, defendant allegedly spat on another correctional officer and was charged with aggravated battery. On April 26, 2023, defendant allegedly spat at another correctional officer and was charged with aggravated battery.

On May 1, 2023, defendant allegedly spat on yet another correctional officer and was charged with aggravated battery.

¶ 6    In total, while in custody for the armed robbery charge, defendant was charged with ten additional felonies. Defendant's armed robbery and drug possession cases were before one circuit court judge, two of his aggravated battery cases were before another circuit court judge, and the remaining several aggravated battery charges against him were before a third circuit court judge.

¶ 7    In his cases before the first two judges, for armed robbery, drug possession, and two of the aggravated batteries, defendant was representing himself. In his armed robbery and drug possession cases, the circuit court judge ordered a psychiatric fitness evaluation to determine whether defendant was fit to stand trial. Dr. Brian Curran from Forensic Clinical Services submitted a report in June 2021, finding defendant to be fit to stand trial.

¶ 8    In his cases assigned to the third circuit court judge, on November 4, 2022, the judge ordered a psychiatric fitness evaluation after finding a doubt about defendant's fitness to stand trial. Defendant made an oral motion for a substitution of judge for cause. The case was transferred to another judge for purposes of adjudicating defendant's motion for substitution of judge. On November 7, 2022, Judge Brosnahan was set to hear defendant's motion for substitution of judge, but defendant refused to come to court. On the second attempt for the motion to be heard, on November 9, 2022, defendant again refused to come to court. On that day, Judge Brosnahan ordered the sheriff's deputies to transport defendant to court by any means necessary.

¶ 9     Defendant was brought to court and had an exchange with Judge Brosnahan. Defendant indicated that he wanted to represent himself as he was doing in his cases before the other two judges. Judge Brosnahan informed defendant that she needed to make sure he was fit for trial and fit to represent himself. Judge Brosnahan ordered a psychiatric fitness evaluation.

¶ 10    On January 13, 2023, Dr. Erick Neu from Forensic Clinical Services issued a report finding defendant fit to stand trial and to represent himself. Dr. Neu indicated in his report that defendant refused to participate in the evaluation, so his opinion was developed by reviewing court transcripts, defendant's *pro se* written motions, his rap sheet, incident reports of defendant's alleged offenses, a psychosocial history from 2022, psychological summaries from evaluations in 2017, 2018, 2019, and 2021, hospital records, and medical records from the Cook County Jail.

¶ 11    Dr. Neu found that, during the court proceedings, defendant spoke in a "reasonably organized and relevant manner" and defendant's court filings were "reasonably organized." Relying on defendant's medical records, Dr. Neu found that defendant was not exhibiting significant symptoms from a genuine mental illness, but that his behavior and acts of self-harm were due to maladaptive personality traits with the aim of securing secondary gain. Dr. Neu concluded that there was no clinical data to suggest that defendant had any medical condition that would significantly impede his ability to understand the nature of the proceedings or represent himself and, thus, the doctor found defendant fit for those purposes.

¶ 12    Dr. Neu's report was presented to the court on January 13, 2023. Defendant was not present in court when the report was presented because he had reportedly attempted suicide that

morning. At the next scheduled appearance before Judge Brosnahan, on February 9, 2023, defendant refused to come into the courtroom. Judge Brosnahan appointed the Public Defender's Office to represent defendant. The Judge stated on the record that she continued to have a *bona fide* doubt about whether defendant was fit. She indicated that a fitness hearing was necessary to resolve the issue. Judge Brosnahan asked the parties if they thought defendant should be evaluated by another psychiatrist to get a second opinion. The State and the defense joined in a request for a second opinion and the Judge signed an order for another psychiatric fitness evaluation.

¶ 13    At a court appearance on March 9, 2023, Judge Brosnahan addressed in open court a letter she received from Forensic Clinical Services indicating that defendant refused to attend his appointment for the fitness evaluation. Defendant had previously stated that he had ongoing litigation against Forensic Clinical Services, and at this court appearance he explained that he did not want to talk to anyone from Forensic Clinical Services because it was affiliated with the court and with the State. Defendant asserted that his Fifth Amendment right, his right not to be a witness against himself, made him believe he should not talk to anyone from that entity. Defendant stated that he wanted an "independent examination."

¶ 14    On March 23, 2023, the Public Defender's Office indicated that it was retaining an outside expert to evaluate defendant's fitness to stand trial. While awaiting the independent psychiatrist's report, defendant allegedly continued to physically assault corrections officers and be charged with new offenses as described above. On May 12, 2023, defendant was set to be arraigned in one of the aggravated battery cases, but deputies reported they were having trouble

bringing defendant to court.

¶ 15    Three days later, on May 15, 2023, the court attempted to arraign defendant on the new charges, but defendant refused to come out of the lockup at the courthouse to be arraigned. Judge Brosnahan waived defendant's appearance. Defense counsel attempted to speak to defendant in the lockup. Defense counsel indicated that defendant was acting combatively. Counsel informed the court that defendant said he was going to injure himself and then, as they were talking, defendant began to pick at scabs on his arms and began bleeding profusely. Defendant indicated that he was not going to stop, he was going to continue to harm himself, and he continued to pick at his scabs until "a lot of blood was coming out of his arms." Defendant refused to speak with counsel any further.

¶ 16    On June 14, 2023, defendant refused to come out of the lockup at the courthouse again. Defendant refused to come to court again on June 28, 2023. On July 26, 2023, defendant did not appear in court because he was in medical custody. The results of the independent psychiatric evaluation were completed in late July, and the independent psychiatrist found defendant to be unfit to stand trial. The case was scheduled for a fitness hearing on August 1, 2023.

¶ 17    At the August 1, 2023 court appearance where the fitness hearing was scheduled to commence, defendant arrived to court strapped to a chair resembling a wheelchair. Defendant informed the court that he had sepsis, a blood infection, and osteomyelitis, and there was a good chance he was going to lose his arm. Defendant asked for a continuance and said he wanted to have an appointment with the independent psychiatrist who had found him unfit to stand trial. The trial court was informed by the Public Defender's Office that the independent psychiatrist

had attempted to meet with defendant, but defendant refused to participate in the evaluation. At that point, defendant began spitting at the sheriff's officers that were assigned to bring him to court.

"The Court: So the defendant is spitting ***.

Defendant: I'm going to die anyway. I'm going to die anyway.

The Court: Stop it.

Defendant: I'm going to die anyway.

The Court: Stop spitting in court.

Defendant: I'm going to die anyway. I swallowed all those pills and those fucking screws. I'm going to die anyway.

The Court: Stop it.

Defendant: No, I'm going to die anyway.

The Court: Do you have a spit guard?

Defendant: I'm going to die anyway. I'm going to die anyway. I swallowed all those pills before I got here anyway. I'm going to die anyway. I'm going to die anyway. I'm going to die anyway, so what does it matter? I'm going to die anyway.

The Court: I hope you get help.

Defendant: I'm going to die anyway.

The Court: I hope you get [help], Mr. McGuinn.

Defendant: I'm going to die anyway. I'm going to die anyway. You don't respect

> my life, so why should I respect your court proceedings? I'm going to die anyway.
>
> The Court: You can take him out."

Judge Brosnahan entered an order for defendant to be treated in the healthcare unit and she continued the case to August 11, 2023 for the fitness hearing. The Judge indicated in her order that defendant was to be brought to court on August 11, 2023 for the fitness hearing by any and all means.

¶ 18    When the parties appeared on August 11, 2023 for the second attempt at conducting the fitness hearing, defendant was not present in court. Judge Brosnahan stated on the record that defendant was brought to court as she ordered, but 30 minutes before the hearing was to begin, defendant smeared excrement all over the lockup and himself. The Judge explained that, "obviously [, defendant] cannot be brought out into court in that condition."

¶ 19    The public defender assigned to represent defendant explained that she had gone to see him in the lockup. Defendant informed his public defender that he wanted a continuance and a new trial and, while she was there, she noticed that there were feces spread on the wall, on the lock to defendant's cell, and on defendant's hands and jumpsuit. The public defender went back to lockup a second time to observe defendant, this time accompanied by the independent psychiatrist who was present in court to testify at the hearing about defendant's fitness.

¶ 20    Before beginning the fitness hearing, counsel for the State and the defense agreed that it was not really a contested hearing. They agreed that one expert would be testifying. Also before starting the hearing, the trial court expressed that it wanted to explain on the record some of the

issues that had developed with defendant and with getting him to court. The trial court recounted some of the history of defendant's conduct in this case.

¶ 21    The trial court explained that the case came before the court for adjudication of a motion for substitution of judge defendant filed. Defendant was representing himself and the court could not meaningfully engage with defendant. The trial court explained that it wanted to make sure defendant was fit to represent himself before proceeding on the motion for substitution of judge. The trial court explained that there were significant issues occurring with defendant, so it appointed the public defender to assist defendant with going through the fitness portion of the case. The trial court explained on the record that, if defendant was found to be fit, then the court would remove the public defender and defendant would be allowed to represent himself.

¶ 22    The trial court recounted the several instances in which defendant either refused to come to the courthouse or come out of the lockup into the courtroom. The trial court recounted that, on August 1, 2023, the court and the parties were anticipating having a fitness hearing. Defendant came strapped to a chair and was restrained. Then, at a point during the court's discussion with defendant, defendant "became enraged and was rocking the chair and began to spit violently to the left and to the right, trying to hit the two jail guards that were behind him." The trial court explained that it held over the fitness hearing to this date and ordered the sheriffs to bring defendant by any means necessary "so he could be present for his fitness hearing or at least have the opportunity to be present for his fitness hearing." Then, the court was informed 30 minutes before the hearing that defendant had spread excrement around the walls of his cell and on himself.

- 9 -

¶ 23    The trial court recounted defendant's behavior at his last court appearance where he asked to continue the fitness hearing in which defendant claimed he had medical issues that were going to cause the amputation of his arm, spitting on the sheriff's deputies, repeatedly claiming he was going to die, and claiming that he had swallowed pills and screws. At this second attempt to conduct the fitness hearing, defendant again asked to continue the hearing and spread feces on himself and the walls. The trial court explained that defendant's actions might be volitional as a way to stop the proceedings or it might be that defendant was really not in touch with what was happening.

¶ 24    The trial court concluded that defendant was "absenting himself" from the fitness hearing by his actions. The court asked appointed defense counsel if she was asking for defendant to be brought out for the fitness hearing in the condition he was in. Counsel replied that she was "deferring to the safety and security constraints of the courtroom staff." Defense counsel did not waive defendant's appearance, but did not insist on his presence based on the circumstances.

> "The Court: All right. As of right now, based on the fact that – and it has been confirmed by the Defense that [defendant] has spread excrement all over the walls, the lock, as well as his own person - I cannot bring him out for a fitness hearing for a myriad of reasons - the safety of the staff, the safety of himself, the biohazard it may or may not create, the dangerousness to individuals. So we are going to proceed to the fitness hearing. You are ready today. Your doctor is here. So we will proceed to the fitness hearing, and [defendant] has absented himself by his behavior from those proceedings.

Defense Counsel:   And, Judge, just so I am making my record clear, I am not

waiving his appearance, but I am not asking for him to be brought [into the

courtroom] in the current condition."

¶ 25    The parties proceeded with the fitness hearing without defendant present. During opening

statements, both the State and the defense agreed that the trial court should consider the expert

testimony and its own observations to determine whether defendant was fit to stand trial.

¶ 26    Dr. Carl Wahlstrom testified as an expert witness. Dr. Wahlstrom is a general and

forensic psychiatrist and is in private practice. He was hired by the Public Defender's Office to

evaluate defendant for his fitness to stand trial. Dr. Wahlstrom reviewed extensive records in this

case including defendant's jail records and hospitalization records. Dr. Wahlstrom went to meet

with and evaluate defendant at the jail, but defendant refused to meet with him. Dr. Wahlstrom

was taken to see defendant in his jail cell, and Dr. Wahlstrom observed defendant curled up in

the fetal position in the corner of the dark cell under a blanket mumbling to himself. Dr.

Wahlstrom also testified about the observations he made of defendant in the lockup prior to the

hearing. The Doctor saw feces in the cell and on defendant, and defendant was making

nonsensical requests of his attorney.

¶ 27    Dr. Wahlstrom testified about defendant's mental health history. The Doctor believed

that defendant suffered from major depressive disorder and mixed borderline personality

disorder. Dr. Wahlstrom testified that his opinion was informed by defendant continuing to

commit new offenses since he was last evaluated by Forensic Clinical Services. It was the

Doctor's opinion that defendant's condition was deteriorating. Dr. Wahlstrom explained that he

thought the prior fitness evaluations of defendant were flawed because he did not think the doctors spent a whole lot of time getting to know defendant. The Doctor stated that he believed the issues with defendant were getting worse and, even if in the past defendant was engaging in some of the behavior for purposes of manipulation, "this has now taken on a new - a new dimension where it just seems to be, you know, out of control and getting worse and he is not really being coherent."

¶ 28    Dr. Wahlstrom concluded that defendant was impaired in his capacity to relate relevantly to his attorney and assist her in developing a realistic defense strategy, and that he was impaired in his capacity to express an understanding for and cooperate with expectations for behavioral control during proceedings. Dr. Wahlstrom further concluded that defendant was impaired in his capacity to recall and reflect meaningfully and rationally on the nature and circumstances of the alleged offenses with which he is charged. As such, Dr. Wahlstrom found defendant to be unfit to stand trial.

¶ 29    However, in Dr. Wahlstrom's opinion, it was possible for defendant to attain fitness for trial at a later time. The Doctor stated his belief that defendant would benefit from a secure, inpatient hospital setting where he could be evaluated over time and where his psychiatric conditions could be managed and addressed. Dr. Wahlstrom suggested that, if defendant cooperated and was able to be medicated with his psychiatric conditions being managed, defendant might be fit for trial within a one-year period.

¶ 30    The defense rested after Dr. Wahlstrom's testimony. The State did not call any witnesses. During closing arguments, the defense urged the court to accept the testimony of Dr. Wahlstrom and take the court's own observations of defendant into account and find defendant to be unfit.

¶ 31    The trial court found defendant to be unfit for trial. The trial court scheduled another court appearance for a month later to receive a status on defendant's placement and an update on his fitness. The trial court has continued to receive status reports from the Department of Human Services regarding defendant's condition. Defendant now appeals the trial court's finding that he is unfit for trial.

¶ 32    We have jurisdiction to hear this appeal under the Illinois Supreme Court Rules. A trial court's order finding a defendant unfit to stand trial and remanding him for treatment to regain fitness is an appealable order. Ill. S. Ct. R. 604(e) (West 2022) (eff. Apr. 15, 2024).

¶ 33                                ANALYSIS

¶ 34    Defendant argues that the trial court erred when it found him to be unfit for trial. Defendant argues: (1) the trial court's finding of his unfitness to stand trial was against the manifest weight of the evidence; (2) he was deprived of his statutory right to be present at the fitness hearing; and (3) he was denied effective assistance of trial counsel based on counsel's failure to protect and advance his right to be present at the fitness hearing.

¶ 35    *I. Defendant's Fitness to Stand Trial*

¶ 36    Defendant argues that the circuit court's finding that he is unfit for trial is against the manifest weight of the evidence. The due process clauses of the Illinois and United States Constitutions prohibit the prosecution of a defendant who is unfit for trial. Ill. Const. 1970, art. I,

- 13 -

§ 2 (West 2022); U.S. Const., Amend., XIV (West 2022); *Medina v. California*, 505 U.S. 437, 439 (1992). A defendant is unfit for trial if, due to his mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or assist in his defense. 725 ILCS 5/104-10 (West 2022); *People v. Brown*, 2020 IL 125203, ¶ 19.

¶ 37   All defendants are initially presumed to be fit for trial; however, if the court finds a *bona fide* doubt exists concerning a defendant's fitness, then a hearing must be held, at which the State bears the burden of proving by a preponderance of the evidence that the defendant is fit. *Brown*, 2020 IL 125203, ¶ 19; 725 ILCS 5/104-11 (West 2022). The trial court's role in assessing the defendant's fitness must be an active determination, not reliant solely on an expert's conclusion that the defendant is fit. *People v. Gipson*, 2015 IL App (1st) 122451, ¶¶ 29-30. The ultimate determination regarding whether a defendant is fit to stand trial must be considered in light of all circumstances. *Id.* at ¶ 35. The trial court's ruling on the issue of fitness will be reversed only if it is against the manifest weight of the evidence. *People v. Jamison*, 197 Ill. 2d 135, 153 (2001); *People v. Mahaffey*, 166 Ill. 2d 1, 18 (1995).

¶ 38   The trial court initially ordered a fitness evaluation that was completed by Dr. Erick Neu. Dr. Neu opined defendant was fit for trial, but the trial court and the attorneys in the case continued to have doubts about defendant's fitness. The trial court ordered a fitness hearing. The parties jointly moved for a second opinion to be obtained on the issue of defendant's fitness. In an exchange with the court, defendant explained that he would not cooperate with an assessment by the Circuit Court's Forensic Clinical Services. Defendant requested an independent psychiatric evaluation. The Office of the Public Defender, having been appointed to assist

- 14 -

defendant on the fitness issue, retained an independent expert for defendant. An independent

fitness examination was performed by Dr. Carl Wahlstrom, a psychiatrist in private practice.

¶ 39    At the fitness hearing, the defense called Dr. Wahlstrom as a witness. Dr. Wahlstrom

opined the defendant was unfit for trial. The defense urged the trial court to accept Dr.

Wahlstrom's finding and testimony that defendant was unfit for trial. The trial court accepted Dr.

Wahlstrom's testimony and, also in consideration of its own observations of defendant, found

defendant to be unfit for trial as the defense requested. Now, in this appeal, defendant argues that

the trial court erred when it granted the relief that was requested on his behalf in the trial court.

¶ 40    Defendant did not object to an additional fitness evaluation being performed, and instead

defendant informed the circuit court that he would participate with an additional evaluation if an

independent doctor was retained to perform the evaluation. Defendant accepted and acquiesced

to the public defender being appointed to assist him. Defendant asked for and received an

independent psychiatric fitness evaluation.

¶ 41    At the fitness hearing, the public defender argued for a finding of unfitness before the

circuit court. A defendant is bound by the acts of his attorney. *People v. Johnson*, 45 Ill. 2d 38,

41-42 (1970). Therefore, defendant cannot now argue that the trial court's finding is against the

manifest weight of the evidence where the defense was the party who introduced that evidence

and was the party who urged the trial court to accept the evidence and rule as it did. See *People*

*v. Hunt*, 234 Ill. 2d 49, 56 (2009) (the theory under which a case is tried in the trial court

cannot be changed on review); *People v. Major-Flisk*, 398 Ill. App. 3d 491, 500 (2010) (a party

is estopped from taking a position on appeal that is inconsistent with a position the party took in

- 15 -

the trial court); *People v. Schwab*, 151 Ill. App. 3d 424, 434 (1986) (where a party raises a question for the first time on appeal it is considered waived, and it may not be considered by the reviewing court); *McMath v. Katholi*, 191 Ill. 2d 251, 255 (2000) (a party cannot complain of error that she induced the court to make or to which she consented). We find defendant is procedurally barred from raising the issue of whether the trial court's finding was against the manifest weight of the evidence.

¶ 42    Procedural bar aside, we would find the trial court's finding that defendant was unfit for trial was not against the manifest weight of the evidence. Defendant argues that the trial court erred by relying on Dr. Wahlstrom's conclusions where those conclusions conflicted with earlier expert opinions about defendant's fitness. Defendant points out that, because neither Dr. Wahlstrom nor any prior doctors were able to meet with defendant to conduct an examination, Dr. Wahlstrom relied on essentially the same evidence as the prior doctors and reached a very different conclusion. Defendant contends that Dr. Wahlstrom failed to provide a sufficient explanation for why his conclusion was different than the two prior doctors who had found defendant fit for trial. Defendant argues that "Dr. Wahlstrom's report conflicted drastically with the evidence from [defendant's] treatment providers and the earlier finding of fitness, but Dr. Wahlstrom provided nothing more than a conclusory basis for this difference."

¶ 43    The opinion and the testimony of Dr. Neu and Dr. Curran were not presented at the fitness hearing or entered into evidence. However, those assessments were discussed by Dr. Wahlstrom to explain why his expert opinion differed. Dr. Wahlstrom was asked specifically about why he came to a different conclusion than the psychiatrists who had previously evaluated

defendant's fitness for trial. Dr. Wahlstrom testified that the previous evaluation was outdated based on the developments in defendant's behavior and the deterioration of his mental state during the eight-month period from when the prior evaluation was conducted. Dr. Wahlstrom also stated that the previous doctors that evaluated defendant had likely not spent enough time with defendant to get a true sense of his mental state. Dr. Wahlstrom expressly stated that he had taken the contrary opinions of his colleagues into account when rendering his opinion.

¶ 44    By the time of the fitness hearing, Dr. Neu's testimony was eight months old. Dr. Wahlstrom testified that he was concerned that defendant continued to commit more crimes and be charged in new cases since he was last evaluated by Forensic Clinical Services eight months prior. The Doctor testified that defendant's condition appeared to be deteriorating during the time period between evaluations. Dr. Wahlstrom, unlike Dr. Neu, also based his opinion on conversations with defense counsel and two separate in-person observations of defendant which were made many months after Dr. Neu's report was issued. For example, Dr. Wahlstrom was able to observe defendant and found him to be "incoherent" when observing him in the lockup when defendant smeared feces all around. Dr. Wahlstrom was also able to observe defendant in the jail where he observed defendant curled up in the fetal position in the corner of the dark cell under a blanket mumbling to himself. Dr. Neu's report does not indicate that he personally observed defendant to arrive at his conclusion but rather relied solely on documentary evidence.

¶ 45    Dr. Wahlstrom also had eight months of additional data to consider that the previous doctors did not have, including much information that was relevant to defendant's putative fitness: aggressive and extreme behavior, suicidal ideation, self-harm, and an additional 10

felony charges. The record reflects the frequency with which defendant was engaging in erratic and extreme behavior in the months leading up to the fitness hearing. These developments and the differences in the observations by the psychiatrists provide a rational trier of fact with a reason to potentially accept one expert's opinion over another.

¶ 46     Dr. Wahlstrom testified that defendant was impaired in his capacity to relate relevantly to his attorney and assist her in developing a realistic defense strategy and that defendant was impaired in his capacity to express an understanding for and cooperate with expectations for behavioral control during the proceedings. Dr. Wahlstrom also testified that defendant was impaired in his capacity to recall and reflect meaningfully and rationally on the nature and circumstances of the alleged offenses with which he is charged. The trial court agreed and accepted those conclusions, and the trial court's findings were not against the manifest weight of the evidence. See *People v. Harris*, 2015 IL App (1st) 133892, ¶ 20 (a trial court's findings are against the manifest weight of the evidence only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence).

¶ 47     The trial court also had the opportunity to observe defendant on several occasions over the span of several months, albeit not during the fitness hearing itself. The trial court repeatedly expressed concerns about defendant's fitness even before hearing the conclusion of the expert witness. The trial court was able to observe defendant act and speak incoherently in open court, become enraged, spit at sheriff's deputies, and spread excrement on himself and the court's lockup. The trial judge was not required to accept Dr. Neu's opinion as defendant suggests it should have as the "ultimate issue was for the trial court, not the experts, to decide." *Mahaffey*,

166 Ill. 2d at 18 (quoting *People v. Bilyew*, 73 Ill. 2d 294, 302 (1978)).

¶ 48    Although those earlier assessments were not in evidence, it is clear that the court *did* take the other doctors' assessments into consideration. The reason that the trial court and the parties decided to have a second evaluation conducted was because, after receiving Dr. Neu's report, there remained a *bona fide* doubt for the court and the parties about defendant's fitness for trial. The trial court recounted on the record some of the limitations in Dr. Neu's evaluation, such as that he did not meet with defendant. The ultimate decision was for the trial court to decide whether defendant was fit for trial, and the court accepted the opinion of Dr. Wahlstrom over that of Dr. Neu or Dr. Curran. See *Mahaffey*, 166 Ill. 2d at 18 (the issue of whether a defendant is fit for trial is for the court, not the experts, to decide and the credibility and weight to be given to psychiatric testimony are questions for the trial court). A decision is against the manifest weight of the evidence when the opposite conclusion is apparent. *Harris*, 2015 IL App (1st) 133892, ¶ 20. In this case, the trial court's decision that defendant was unfit is not against the manifest weight of the evidence and defendant's claim fails.

¶ 49    *II. Defendant's Right To Be Present At Fitness Hearing*

¶ 50    Defendant argues that the trial court's finding he was unfit for trial should be reversed because the hearing was conducted in his absence. Under Illinois law, the defendant's presence at a hearing concerning his fitness "may be waived only if there is filed with the court a certificate stating that the defendant is physically unable to be present and the reasons therefor." 725 ILCS 5/104-16(c) (West 2022). "The certificate shall be signed by a licensed physician who, within 7 days, has examined the defendant." *Id*.

¶ 51　Defendant points out that he has a statutory right, independent of his counsel's wishes, to insist upon a jury determination of his fitness (citing 725 ILCS 5/104-12 (2022)) and he was not present to make that election (citing *People v. McCoy*, 2014 IL App (2d) 130632, ¶ 27). Defendant also points out that the trial court must have an opportunity to observe the defendant when making a fitness determination (citing *e.g.*, *People v. Robinson*, 221 Ill. App. 3d 1045, 1050 (1991)).

¶ 52　The trial court asked appointed defense counsel if she was asking for defendant to be brought out and be present for the fitness hearing. Counsel replied that she was "deferring to the safety and security constraints of the courtroom staff." Defense counsel did not expressly waive defendant's appearance, but she did not object to the proceedings continuing in defendant's absence nor did she invoke his right to be present.

¶ 53　On appeal, however, defendant argues that it was plain error for him to be denied the right to be present at his own fitness hearing. Defendant argues that "[b]ecause he had a statutory right to be present, absent physical infirmity, and because his presence could have affected the court's determination of his fitness, second-prong plain error occurred." (Citing *People v. Villa*, 2023 IL App (1st) 210352-U, ¶ 64). Defendant also argues that, "because this error occurred in the context of a closely-balanced fitness hearing, first-prong plain error also occurred." Plain error occurs where "(1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence." *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005). When considering a claim of plain error, we must first determine whether error occurred. *Id*. at 184.

¶ 54    Illinois courts have accepted that fitness hearings are a critical stage in a criminal case and a defendant has a right to be present at a fitness hearing both as a matter of statute and as a matter of due process. *See People v. Olsson*, 2015 IL App (2d) 140955, ¶¶ 22, 24. "Both the federal constitution and our state constitution afford criminal defendants the general right to be present, not only at trial, but at all critical stages of the proceedings, from arraignment to sentencing." *People v. Brown*, 2023 IL 126852, ¶ 12.

¶ 55    However, the right to be present, even at a critical stage of the proceedings, is not absolute. *People v. Lindsey*, 201 Ill. 2d 45, 56 (2002). A defendant may forfeit his right to be present, even at a critical stage, by misconduct. *Id.* (citing *Illinois v. Allen*, 397 U.S. 337, 343 (1970)). The Supreme Court of the United States has explained that a defendant may forfeit his right to be present at critical stages in a case through conduct that makes his participation unworkable or impossible.

> "Although mindful that courts must indulge every reasonable presumption against the loss of constitutional rights, we explicitly hold today that a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." *Allen*, 397 U.S. at 343.

See also *United States v. Brown*, 791 F.2d 577, 578 (7th Cir. 1986); *United States v. Benabe*, 654 F.3d 753, 770–71 (7th Cir. 2011); *United States v. Delatorre*, 581 F. Supp. 2d 968, 989 (N.D. Ill. 2008).

¶ 56    We do not find that this is a case where the defendant's presence was waived. Within the less-than-one-year period between the case being assigned to the trial judge and the date of the fitness hearing, defendant missed at least nine scheduled court appearances, mostly by flatly refusing to participate, despite being in custody the entire period. Defendant also refused to be evaluated by any of the psychiatrists that attempted to meet with him.

¶ 57    The trial court scheduled an initial fitness hearing, and defendant was brought to court strapped to a chair so he could be present. At that appearance, the trial court was forced to continue the scheduled hearing due to defendant's outrageous conduct. The trial court continued the case and gave defendant a second opportunity to be present and participate in the fitness hearing, to the extent that the trial court ordered court personnel to bring defendant to court by any means necessary. Defendant was physically brought to court for the fitness hearing, but before his case was called, defendant spread feces all over his holding cell and his person. Defendant's actions made his participation unworkable or impossible. The trial court concluded that defendant was "absenting himself" from the fitness hearing by his actions. We agree with the trial court that defendant forfeited his right to be present at the hearing.

¶ 58    Defendant engaged in a course of conduct over a period of weeks that made his presence and participation in his fitness hearing impossible. *Allen*, 397 U.S. at 343. We find that the trial court adequately provided defendant with the opportunity to be present at the hearing, to the

extent of ordering defendant to be physically brought to court by any means. Defendant forfeited his right to be present at the hearing by his outrageous conduct. A defendant's absence from a critical proceeding will violate his constitutional rights only if the record demonstrates that defendant's absence caused the proceeding to be unfair or if his absence resulted in a denial of an underlying substantial right. *Richardson*, 2021 IL App (1st) 190821, ¶ 50. A defendant's constitutional right to be present is violated only when his absence results in the denial of a fair and just trial. *Id*. Under the circumstances of this case, we find no error in the trial judge's decision to proceed with the hearing.

¶ 59    Finally, even if we assume the trial court erred in conducting the hearing in defendant's absence, we are convinced beyond a reasonable doubt that any error in conducting the hearing without defendant's presence was harmless. Under second-prong plain error, a defendant is entitled to relief when there is a clear or obvious error in the proceedings and that error is so serious that it affected the fairness of the defendant's proceedings and challenges the integrity of the judicial process. *Id*. at 565. We are convinced beyond a reasonable doubt that defendant's presence at the hearing would not have made it more likely that the trial court would find him fit for trial. Here, the fairness of the proceedings was not affected by defendant's absence and any error arising from defendant's absence in this case was harmless. See *People v. Harris*, 294 Ill. App. 3d 561, 568 (1998) (if a defendant's absence from a critical stage is harmless and no prejudice results, the defendant is not entitled to relief due solely to his absence).

¶ 60    Defendant relies on *People v. Lewis*, 2024 IL App (2d) 230045 in which we recently found that the defendant's presence at a fitness hearing was not waived. *Lewis* can be

distinguished because an objection to defendant's absence at the fitness hearing was preserved, unlike this case which must be considered under plain error standards. In *Lewis*, we explicitly noted "that defense counsel repeatedly asserted defendant's right to be present and objected to the noncompliance with the waiver requirements of the statute." *Id*. at ¶ 38. In this case, counsel never asserted defendant's right to be present nor did she object to the noncompliance with the statute. Hence, this case is proceeding under plain error review while *Lewis* was not.

¶ 61    The court in *Lewis* also did not consider the potential harmlessness of the error or the lack of prejudice. Those considerations are important in this case because it is apparent that, even if defendant was present and the hearing proceeded in the manner he now suggests it should have, the outcome of the hearing would not have been different.

¶ 62    Under first-prong plain error, a defendant is entitled to relief when the evidence is closely balanced, and the error alone is such that it threatens to tip the scales of justice against the defendant. *People v. Piatkowski*, 225 Ill. 2d 551, 564-65 (2007). The evidence was not closely balanced here and any error in defendant's absence from the hearing did not threaten to tip the scales of justice against him and did not have any impact on the outcome of the hearing.

¶ 63    Based on the foregoing, defendant is not entitled to have his fitness determination set aside where he forfeited both his statutory and constitutional rights to be present and neither the fairness of the proceedings nor the outcome of the hearing was affected by his absence.

¶ 64    *III. Ineffective Assistance Of Counsel*

¶ 65    Defendant claims he was denied effective assistance by his appointed counsel. Defendant maintains that trial counsel performed ineffectively by allowing the trial court to proceed to the

fitness hearing with defendant absent and by failing to object to the improper waiver of her client's presence. According to defendant, "[g]iven the importance of the defendant's presence at a fitness hearing, defense counsel had an obligation to safeguard that right."

¶ 66      Criminal defendants have a constitutional right to the effective assistance of competent counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. Ineffective assistance of counsel claims are judged under the two-prong standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under *Strickland,* counsel is ineffective where: (1) her performance was objectively unreasonable, and (2) there is a reasonable probability that the result would have been different but for counsel's error. *Id*. Under the second prong of *Strickland*, a showing of actual prejudice is required to succeed on an ineffective assistance claim. *People v. Enoch*, 122 Ill. 2d 176, 202 (1988).

¶ 67      Defendant claims that his trial counsel's performance was objectively unreasonable here because counsel should have been aware of the statutory requirements for waiving his presence at the fitness hearing and ensure they were followed. Defendant suggests that, if counsel had "obtained a continuance and ensured his presence at a future fitness hearing, he could have explained his behavior on the date of the fitness hearing or otherwise provided the trial court with more information to base its fitness determination on." Defendant also suggests that if counsel worked to ensure his appearance at the hearing, he could have requested a jury and would have been entitled to proceed in that manner.

¶ 68      Under the first prong of *Strickland*, we analyze whether counsel's performance was objectively unreasonable. *People v. Hatchett*, 2015 IL App (1st) 130127, ¶ 28. Here, as

defendant requested, the Office of the Public Defender hired an independent expert to assess defendant's fitness for trial. That expert, Dr. Wahlstrom, concluded defendant was unfit. Appointed counsel proceeded to the hearing to argue defendant was unfit for trial and obtained the desired ruling from the trial court.

¶ 69    Defense counsel recounted on the record that she once went to visit defendant to discuss his case in the lockup and defendant was combative and said he was going to injure himself. Then, as they were talking, defendant began to pick at scabs on his arms and began bleeding profusely. Defendant indicated that he was not going to stop, he was going to continue to harm himself, and he continued to pick at scabs until "a lot of blood was coming out of his arms." Defense counsel was also the person who went to meet with defendant on the day of the fitness hearing and discovered him with feces smeared on the walls of his cell and on his person. It is clear from the record that trial counsel herself could well have believed defendant was unfit for trial and such a belief was not objectively unreasonable. Defendant's ineffective assistance claim must fail because counsel is not required to argue for a finding of fitness when counsel believes defendant is, in fact, unfit. *People v. Holt*, 2014 IL 116989, ¶ 50.

¶ 70    As our Supreme Court has explained, "[n]o plausible interpretation of the right to counsel would require defendant's lawyers to fight for an outcome that, in counsel's estimation—and in fact—would violate due process." *Id*. at ¶ 51. As such, counsel did not act unreasonably when she decided not to demand defendant's presence at the hearing upon being confronted with the decision of whether to demand defendant's presence or proceed in a manner that ensured an unfit client was not tried on criminal charges in violation of his due process guarantees. See *id*. at ¶ 53.

As was later confirmed by Dr. Wahlstrom, defendant had been increasingly unpredictable during the proceedings, had continued to commit aggravated batteries against correctional officers and officers of the court, and had become more dangerous to himself and others as the proceedings progressed.

¶ 71    Additionally, trial counsel's conduct in allowing the proceedings to advance in defendant's absence would have been a reasonable strategic decision. The record demonstrates that defendant and counsel were unable to meaningfully communicate, such that his presence would not have been helpful to counsel. In addition, as shown by defendant's conduct in the proceedings leading up to the fitness hearing, defendant's presence was significantly more likely to harm the chances he had at a favorable outcome than to help his chances.

¶ 72    Defendant's ineffective assistance of counsel claim also fails under the second prong of *Strickland* as he has not shown prejudice. To show prejudice and substantiate a claim for ineffective assistance of counsel, a defendant must show that, but for counsel's error, the outcome of the proceedings likely would have been different. *Enoch*, 122 Ill. 2d at 202. Here, even if counsel had done all of the things that defendant now claims she should have done, it is apparent that the outcome of the hearing would have been the same. As such, defendant is not entitled to relief for a claim for ineffective assistance of counsel.

¶ 73                            CONCLUSION

¶ 74    For the foregoing reasons, the ruling of the Circuit Court of Cook County is affirmed.

¶ 75    Affirmed.